IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ALAN H. ASHLEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:10cv518-DWD |
| | ) |
| THE PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendants' Motion for Attorney's Fees (Docket No. 24). The Defendants have submitted a memorandum in support of the Motion, with supporting documentation, and although the Plaintiff has not responded, the Motion is DENIED for the reasons set forth herein.

### I. BACKGROUND

Alan H. Ashley ("Ashley" or "Plaintiff") was employed as an insurance agent for Prudential Insurance Company of America ("Prudential," or collectively with the trustees also named as defendants, hereinafter referred to as the "Defendants") from February 15, 1971 until sometime in 1990.[1] He began to receive long-term disability benefits on September 13, 1990, which he continued to receive until he opted for pension benefits starting on December 1, 2003.

---

[1] The facts of this case are only briefly summarized herein based upon the undisputed material facts set forth in this Court's Memorandum Opinion granting the Defendants' Motion for Summary Judgment, with additional discussion of the procedural background relevant to the pending Motion for Attorney's Fees. For a more detailed discussion of the facts, the reader is referred to this Court's previous Memorandum Opinion, entered on April 18, 2011 (Docket No. 22).

When he began to receive the pension benefits, Ashley learned that he was credited with nineteen (19) years of service credits pursuant to the 1976 Retirement Plan for United States Employees and Special Agents (the "1976 Plan"), which governs his pension.

Asserting that he was actually entitled to thirty three (33) years of service credits, Ashley challenged Prudential's calculation of benefits in accordance with Prudential's established administrative review process. During those proceedings, Ashley's arguments erroneously relied upon the Summary Plan Description in effect in 2005 ("2005 SPD"), not the SPD corresponding to the 1976 Plan. Those arguments were rejected both at the initial stages of administrative review as well as on appeal, and Prudential persisted in its determination of service credits. In both instances, Ashley's mistaken reliance on the 2005 SPD was explained in the respective administrative rulings.

Following the denial of his administrative appeal, Ashley initiated this lawsuit challenging Prudential's decision pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001-1461. The Defendants moved for summary judgment and this Court granted the motion. (Mem. Op., April 18, 2011.) In doing so, the Court emphasized two particular weaknesses in Ashley's case which are relevant here. First, in opposing the Motion, Ashley acknowledged the misplaced reliance on the 2005 SPD and, for the first time, he set forth an argument based on the appropriate plan documents. (Id. at 10.) Second, Ashley proffered evidence not previously submitted during administrative review -- a "Commemoration of Retirement." (Id.) The document purports to establish that Ashley's service did not terminate in 1990, but persisted until 2003. (Id.)

Relying on Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995), the Court disregarded the newly submitted evidence. (Id. at 11.) And although the Court acknowledged

the probability that the Fourth Circuit would also forbid consideration of those arguments not previously submitted during administrative proceedings, the Court explicitly refrained from relying on such a rule. (Id. (citing Voliva v. Seafarers Pension Plan, 858 F.2d 195, 196 (4th Cir. 1988)).) In doing so, this Court emphasized that such a rule was discussed only in dicta and, accordingly, it refrained from establishing such precedent.

Instead, the Court addressed and rejected Ashley's newly crafted arguments as presented. In doing so, the Court acknowledged the "cumbersome distinction between 'Credited' and 'Non-Credited' service" as addressed by the terms of the 1976 Plan. (Mem. Op., April 18, 2011 at 4.) Because "[t]he Plan Document is not without its deficiencies," this Court found it "understandable that Ashley would misperceive his 'Non-Credited' service as a variable in the calculation of his accrued benefits." (Id. at 19-20.) Nevertheless, the Court also found that Prudential was invested with discretion to administer and interpret the plan document. (Id. at 13-14.) Moreover, the Court concluded that Prudential reasonably exercised its discretion in completing the "unenviable task of interpreting cumbersome plan language," and thus deferred to its interpretation. (Id. at 20.) "Cumbersome" though it was, the Court concluded that the terms of the 1976 Plan were consistent only with Prudential's interpretation, and not with that as proposed by Ashley. Accordingly, dispositive relief was granted in the Defendants' favor.

The Defendants now seek an award of attorney's fees pursuant to the discretionary fee-shifting provision of ERISA. Although evidence is proffered in support of fees in the amount of thirty-four thousand six hundred fifty-nine dollars ($34,659.00), Prudential requests a reduced award of fifteen thousand dollars ($15,000.00).

3

## II. STANDARD OF REVIEW

In any action brought pursuant to ERISA's civil enforcement provision, 29 U.S.C. § 1132, "the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (emphasis added). "ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court." Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1028 (4th Cir. 1993) (en banc). "Unlike some federal statutes, ERISA establishes *no presumption* for the award of fees to a 'prevailing [party].'" Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 390 (4th Cir. 2006) (emphasis added) (citation omitted). While exercising its discretion in this manner, courts are guided by five non-exclusive factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy the award of fees; (3) whether the award of fees would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries, or to resolve a significant legal question; and (5) the relative merits of the parties' positions. DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 876-77 (4th Cir. 2011) (citing Quesinberry, 987 F.2d at 1029). The findings of fact underpinning such an analysis are reviewed only for clear error. Johanssen v. Dist. No. 1 – Pac. Coast Dist., MEBA Pension Plan, 292 F.3d 159, 178 (4th Cir. 2002).[2]

---

[2] These factors govern the question of *whether* to grant attorney's fees, not the *value* of reasonable attorney's fees. The latter issue involves a separate "lodestar" analysis, which this Court need not address given its conclusion that an award of any fees is not appropriate in this case. See, e.g., Robinson v. Equifax Info. Servs., 560 F.3d 235, 243 (4th Cir. 2009); Porter v. Elk Remodeling, Inc., No. 1:09cv446, 2010 U.S. Dist. LEXIS 89037, at *7 (E.D. Va. August 27, 2010) (citing Robinson in awarding fees pursuant to ERISA).

## III. DISCUSSION

Upon consideration of the five factor Quesinberry guidelines, the Court declines to exercise its discretion to award Prudential any attorney's fees. The Court finds that factors one and two weigh against the requested fee award, while factor four weighs in favor of the award. Although factor five (the relative merits of each party's position) weighs somewhat in favor of the fee award, the inadequate drafting of the 1976 Plan renders any emphasis on the factor inappropriate. The Court concludes that factor three is dispositive, given the potential deterrent effects of any fee award. Accordingly, three of the five factors weigh against any fee award, and the Court therefore denies the requested relief.

**A.     Bad Faith -- Factor One**

Factor one is focused on whether or not Ashley's claims were prosecuted in bad faith. Prudential relies on Stark v. PPM America, Inc., 354 F.3d 666 (7th Cir. 2004), to argue that Ashley's "meandering claims" evince such bad faith. (Def.'s Br. Sup. Mot. Atty.'s Fees ("Def.'s Br.") at 2.) That is, that Ashley's abandonment of previous arguments once the opposition to Prudential's request for summary judgment was submitted is enough to establish bad faith. However, such an argument is misplaced where the Seventh Circuit has adopted a different test for awarding attorney's fees in ERISA cases than the analysis that this Court must follow. According to Stark, "there is a 'modest presumption' in favor of awarding fees to the prevailing party" in ERISA cases. 354 F.3d at 673. But the Fourth Circuit, as the controlling appellate authority for this Court, recognizes no such presumption. Carolina Care Plan, Inc., 467 F.3d at 390. And unlike the five-factor test applied in this Circuit, id. (citation omitted), the Seventh Circuit instructs courts to simply ask "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" Stark, 354 F.3d at 673

(quoting Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 593 (7th Cir. 2000)).  The two tests are distinct.

Moreover, the facts of Stark are distinguishable from those of this case.  Unlike the plaintiff in Stark, Ashley did indeed pursue the administrative process, albeit in a disjointed fashion.  And although his theories shifted at the summary judgment stage, such a change in strategy appears to reflect a realization that the previous analysis was in error, not as a result of bad faith.  In Stark, the plaintiff's arguments were so inconsistent that bad faith was readily apparent.  As the Seventh Circuit explained, "Stark argued that the order should be set aside so he could exhaust his plan remedies, certainly a strange request from one who proclaimed loudly that exhaustion would be futile."  Stark, 354 F.3d at 673.  Such intellectual dishonesty is beyond the nature of a merely mistaken argument that results from a complex and confusing series of plan documents, as Ashley was confronted with in his case.

In the Fourth Circuit, "'bad faith' require[s] more than 'mere negligence or error.'" Carolina Care Plan, Inc., 467 F.3d at 390.  Revising one's argument in the midst of ERISA litigation might be prohibited in this jurisdiction, but such a fiat remains an arguably unsettled question in this Circuit.  See Voliva, 858 F.2d at 196.  Indeed, neither party cited Voliva for the proposition, and as already explained, the Court did not rely on the holding in that case when it granted dispositive relief in Prudential's favor. (Mem. Op. at 11-12.)  Accordingly, Ashley's failure to abide by such unsettled law cannot constitute bad faith under the circumstances.  Stated another way, there is simply no basis to conclude that Ashley pursued his claim in bad faith, only that the claim failed.  His claim was based on an understandable misunderstanding of poorly drafted, confusing, and cumbersome plan documents which governed his pension.  Finding no bad faith, the first factor therefore weighs against the award of any attorney's fees.

6

**B.    Ashley's Ability to Satisfy the Fee Award -- Factor Two**

Prudential essentially concedes that factor number two weighs against an award of fees. (Def.'s Br. at 4.)  Although Prudential acknowledges that "[t]here is little evidence regarding [the] Plaintiff's ability to satisfy a fee award," what little evidence does exist in the record suggests that Ashley would encounter a heavy burden if required to pay even half of the accrued fees at issue.  Indeed, his affidavit that was submitted in opposition to Prudential's Motion for Summary Judgment asserts that "[a]s a result of [Ashley's] loss of income from [his] retirement, [he has] lost [his] home."  (Pl.'s Br. Opp'n Mot. Sum. J. ("Pl.'s Br.") at Ex. 1.)  Such uncontested evidence not only suggests that Ashley could not pay the requested amount of fifteen thousand dollars ($15,000.00), but it also suggests that such a judgment might even result in bankruptcy.  Accordingly, the factor weighs substantially against the award of fees.

**C.    Benefit to All Participants -- Factor Four[3]**

Factor four, which inquires whether Prudential's defense of the lawsuit "sought to benefit all participants and beneficiaries," favors a fee award.  Carolina Care Plan, Inc., 467 F.3d at 390 (citing Quesinberry, 987 F.2d at 1029).  Ashley challenged whether Prudential could exercise its discretion in interpreting and administering the plan.  (Pl.'s Br. at 6-7.)  Had such discretion been found lacking, at least a portion of the assets invested in the Plan might have been exhausted by further challenge by other beneficiaries at the expense of the whole Plan.  At the very least, as each beneficiary sought similar relief, the management of those assets could have become increasingly strained.  Accordingly, Prudential's defense of the litigation can be viewed as having been, at least in part, for the benefit of all plan participants and beneficiaries so as to favor an award of fees.

---

[3] The Court reserves its discussion of the dispositive factor three for last.

**D.      Relative Merits of the Parties' Positions -- Factor Five**

Because Prudential ultimately prevailed on its motion for summary judgment, the relative merit of its position also appears to favor its request for attorney's fees. However, any weight placed on the factor must be tempered by the Court's finding that it was "understandable that Ashley would misperceive" the method for calculating his creditable service according the 1976 Plan. (Mem. Op., April 18, 2011 at 20.)

As previously explained, *supra* at Section III(A), dispositive relief was granted upon analysis and rejection of Ashley's good faith arguments, not his "meandering claim[s]." (Def.'s Br. at 2.) The case was resolved based on the deferential standard that Prudential enjoys as plan administrator, which did not thereby render Ashley's arguments meritless. (Mem. Op., April 18, 2011 at 21 ("[E]ven if Prudential's interpretation was not the only reasonable one, it is well within the bounds of permissible interpretations entitled to deference by this Court").) Therefore, while factor five favors the requested fee award, it is not given significant weight as compared to the other factors that must be considered.

**E.      Deterrence Effect -- Factor Three**

Factor three is dispositive of the issue even though the Court is mindful that "this five-factor approach is not a 'rigid test,' but instead provides 'general guidelines.'" Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634-36 (4th Cir. 2010) (quoting Quesinberry, 987 F.2d at 1029). In analyzing the factors, the Court may also "consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts." Id. at 636; Quesinberry, 987 F.2d at 1030. "[I]n any individual case . . . other considerations may be relevant as well." Quesinberry, 987 F.2d at 1029. With such guidance in mind, the Court finds that the deterrence effect, if any, weighs heavily against an award of attorney's fees.

Prudential argues that Ashley "never had a colorable theory as to why he was owed additional retirement benefits, and he further escalated the costs of litigation by abruptly changing his theories during the summary judgment phase of the case." (Def.'s Br. at 5.) While the latter portion of Prudential's argument may be correct, the Court has already chastised him for the "procedural pains" resulting from his sudden "about-face." (Mem. Op., April 18, 2011 at 11-12.) The Court has also made clear that the so-called "shifting theories" issue was not relied upon in the granting of dispositive relief, and that the merits of Ashley's argument were otherwise asserted in good faith. *Supra*, Sections III(A) and (D). Accordingly, the Court must consider the deterrent effect on other beneficiaries who might pursue ERISA claims where the governing plan language contains such "cumbersome" language. (Mem. Op., April 18, 2011 at 20.) Contrary to Prudential's argument, such claims would indeed be at least "colorable." (Def.'s Br. at 5.)

Certainly, "[t]he deterrent effect" of an award is "hardly a desirable one." American Med. Sec., Inc. v. Larsen, 31 F. Supp. 2d 502, 506 (D. Md. 1998). In Larsen, the district court considered the Sixth Circuit's detailed analysis of the third factor of the Quesenberry guidelines to deny an award of attorney's fees. Id. (citing Foltice v. Guardsman Products, Inc., 98 F.3d 933, 937 (6th Cir. 1996)). As the Sixth Circuit explained:

> The third factor -- the deterrent effect of a fee award on other plan administrators [or beneficiaries] -- is one that is likely to have more significance in a case where the defendant is highly culpable than in a case such as this one. Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate *misconduct* is in the offing.

Foltice, 98 F.3d at 937 (emphasis added). Especially where deterrence might interfere with the "remedial purposes of ERISA to protect employee rights and secure effective access to federal

courts," Williams, 609 F.3d at 636, it is appropriate to give the deterrence factor the greatest emphasis and deference. Here, such deterrence weighs against the requested award.

## IV. CONCLUSION

For the reasons stated, the Defendant's Motion for Attorney's Fees (Docket No. 24) is DENIED.

An appropriate Order shall issue.

/s/<br>
Dennis W. Dohnal<br>
United States Magistrate Judge

Richmond, Virginia
Dated: July 11, 2011